UNITED STATES of America ex rel. Albert R. HOUSE, Relator,

v.

Edwin L. SWOPE, Warden, U. S. Penitentiary, Alcatraz, California, Respondent.

Civ. No. 562.

United States District Court
N. D. Florida, Pensacola Division.

Dec. 18, 1956.

Charles S. Coe, Pensacola, Fla., for relator.

C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., for respondent.

DE VANE, Chief Judge.

This case was originally before this Court on April 8, 1954, when relator filed a petition under Title 28 U.S.C. § 2255, to set aside certain sentences imposed upon him for Post Office robberies in the Northern District of Florida. The petition was denied without hearing on said date on the ground that petition stated no valid grounds for relief or for a hearing. The decision of this Court was affirmed by the Court of Appeals on March 2, 1955. United States ex rel. House v. Swope, 5 Cir., 219 F.2d 538. The Supreme Court of the United States granted certiorari and in its order granting same stated:

"The judgment is vacated and the case is remanded to the Court of Appeals for consideration in the light of new information."

House v. Swope, 350 U.S. 945, 76 S.Ct. 324. Upon remand the Court of Appeals sent the case back to this court for a hearing under Section 2255 pursuant to the judgment of the Supreme Court. See 5 Cir., 232 F.2d 853.

The Court set the case for trial on November 28, 1956, and in preparation for the trial entered an order for a writ of habeas corpus ad testificandum on November 9, 1956, and had relator brought to the County Jail at Pensacola, Florida, on November 19, 1956, so that he might confer with his counsel in preparation for said trial. On the late afternoon of November 26, 1956, counsel for relator filed two motions as authorized by Rule 17(b) of the Federal Rules of Criminal Procedure for the production of witnesses, 18 U.S.C. One motion called for the production of Charles McLean of 111 N. Jefferson Street, Dayton, Ohio, and Pearl Arnette of 330 S. Fourth Street, Dayton, Ohio, to appear as witnesses for the purpose of establishing an alibi as to the relator's whereabouts on July 25, 1950, the date of the burglary of the United States Post Office at Freeport, Florida. This motion was brought on for a hearing before the Court when it convened on the 27th and the Court denied same on the ground that it did not meet the requirements of a motion to set aside a verdict and judgment on the ground of newly discovered evidence. The motion on its face disclosed that if such evidence in fact existed, it was well known to relator when he was tried on the indictment charging him with the burglary of the United States Post Office at Freeport, Florida. For authority for the Court's action on this motion see American Jurisprudence Volume 39, Page 162, under the title "Newly Discovered Evidence", Section 156 et seq.

The other motion asked for subpoenas for George Bryant and Ulas D. Lassiter. George Bryant had already been brought to Pensacola as a Government witness and he was made available to counsel for relator for questioning prior to trial and for use as a witness at the trial.

The United States Attorney, at the Court's direction, had been endeavoring since November 9, 1956, through the Federal Bureau of Investigation to locate Lassiter and subpoena him as a witness in the case. He had only recently completed the sentence imposed upon him by this Court for his participation in the two Post Office robberies with relator and his whereabouts were unknown by the prison authorities. He was finally located late in the day of November 26, 1956, in New Jersey. Lassiter notified the United States Attorney and the Court through the Federal officers who found him that he would not willingly appear as a witness in the case. When relator's motion for a subpoena for Lassiter came on for hearing on November 27, 1956, counsel for both parties were advised that Lassiter could not be produced as a witness by an order of this Court and appear on the following day and that rather than continue the case to a later date, the Court would permit counsel for relator to introduce as a part of the evidence in support of relator's petition the statement that Lassiter allegedly made to relator, which

constituted the basis of relator's petition to vacate and set aside the verdict and judgment in his cases. Counsel for relator and the Government agreed to this procedure and the case went to trial on November 28th as scheduled.

At the hearing counsel for petitioner offered the Lassiter statement, which was received in evidence as relator's Exhibit No. 1. George Bryant was next called as a witness in behalf of relator. Bryant denied every material allegation of the statement attributed to him in the Lassiter exhibit and in relator's petition for relief under Section 2255. Bryant testified he was present during the interview between Jimmy Henderson and J. H. Callahan, United States Post Office Inspector, some time prior to the trial of relator, Lassiter and Henderson on the indictments charging them with the Post Office robbery at Valparaiso, Florida, and charging relator and Lassiter with the Post Office robbery at Freeport, but that Callahan being a Government agent he paid no attention whatever to the conversation between him and Henderson and had no memory of anything that transpired during the interview, except that he denied any threats being made by Callahan or having to restrain Henderson at any time during the interview. Bryant also denied the incident set out in relator's petition for relief in which relator outlined a conversation between himself and George Bryant at the Federal Penitentiary at Atlanta. According to the testimony of Bryant, there is not a scintilla of truth in the alleged interview. Relator did not take the stand in his own behalf and called no other witnesses in chief.

After the relator rested, the Government called as witnesses J. A. Callahan, Post Office Inspector, Virgil Breland, Associate Warden, United States Penitentiary, Leavenworth, Kansas, Adam Lewis, Deputy United States Marshal, and William W. Simmons, who was engaged as an extra deputy during the time relator was in the jail in Pensacola when he was on trial for the Post Office robberies in question. The United States Marshal employed three special deputies to act as watchmen at the jail, each on an eight hour tour of duty. Witness Simmons was on the night shift.

Witness Callahan described in some detail the interview he had with Jimmy Henderson. He testified he never touched at all upon the Valparaiso or Freeport Post Office robberies, but upon other cases affecting Henderson and his wife. He testified further that Henderson was very cooperative with him in an effort to solve the two cases in which Henderson's wife was under investigation and that as a result of information he secured from Henderson and otherwise, Henderson's wife was exonerated from having any connection whatever with the two cases in question.

Virgil Breland testified at the time relator was committed to the Atlanta Penitentiary he was employed at that institution. He described in considerable detail all the facts surrounding relator's bringing to him the written statement given to relator by Lassiter (relator's Exhibit No. 1) and which, as the Court stated above, constitutes the heart of relator's petition in this case. The letter was brought by House to Breland for the purpose of having it notarized. Breland testified that House's possession of the letter constituted a breach of prison rules which obligated him to impound the letter, but that he did not at that time advise relator to that effect for the reason he desired to interview Lassiter about the same. He, therefore, directed relator to request Lassiter to come to his office and when Lassiter appeared, he refused to swear to the truth of the contents of the letter, denied any knowledge of the facts set out in the same and stated that he had written the letter as it was dictated to him by relator under fear and duress. According to the testimony of Breland, Lassiter repudiated the alleged facts set forth in the letter in their entirety.

The Government next called Adam Lewis, who was the Deputy United States Marshal in whose custody the relator

was placed during trial from the time he left the County Jail each day until his return after court. He denied ever making any threats of any kind to relator or to Lassiter or to Henderson and denied any conversations with them about the case, except that at Lassiter's request he did take to the United States Attorney a message from Lassiter that he desired to change his plea from not guilty to that of guilty in the Freeport case. Lewis testified that he delivered this message to the United States Attorney prior to the date Lassiter was scheduled to go on trial in that case. The witness testified to a number of statements made by Lassiter at the time, but they have no particular bearing upon the issues involved and for that reason will not be repeated here.

The Government also called Willie W. Simmons, who was one of the three special deputies placed as guards at the jail during the time relator and his co-defendants were on trial. Simmons testified with reference to the alleged visits of Miss Lib O'Bannon. He testified that he never saw her there except on one occasion and that she was talking with Lassiter and some other prisoner whose name he could not remember, but that he was neither of Lassiter's co-defendants, at the point provided in the jail for visitors to talk to inmates. He testified visitors and inmates were not permitted to be together and that conversations between them were carried on through bars that separated them. This witness testified that he ordered Miss O'Bannon to leave and she did so promptly.

The Government also introduced as evidence in this case a complete transcript of the testimony introduced at the trial of relator and his co-defendants in the Valparaiso and Freeport cases.

After the Government concluded its evidence, counsel for relator called Bobby Smith, who was a County Deputy Sheriff stationed at the jail on night shift by the Sheriff of Escambia County. This witness testified that on one occasion when he came on duty near midnight, he found

Miss O'Bannon there, that he ordered her to leave and that she left promptly.

The record contains no evidence supporting any of the material allegations of relator's petition and it is obvious from the record made at the trial that the allegations of the petition are untrue. An order will be entered herein denying the petition to set aside the verdicts and judgments in these cases or either of them.